**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0002226
31-JUL-2014
08:43 AM**

CAAP-13-0002226

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
MARTIN YOUNG, Defendant-Appellant.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 12-1-1580)

MEMORANDUM OPINION
(By: Nakamura, C.J., and Foley and Fujise, JJ.)

Defendant-Appellant Martin Young (Young) was arrested after he attempted to sell a stolen guitar back to its original owner. Plaintiff-Appellee State of Hawai'i (State) charged Young with second-degree theft for intentionally receiving, retaining, or disposing of property of the complaining witness (CW), the value of which exceeded $300, knowing the property had been stolen, with the intent to deprive the CW of the property, in violation of Hawaii Revised Statutes (HRS) § 708-831(1)(b) (Supp. 2013).[1] A jury found Young guilty as charged. The Circuit Court

---

[1] HRS § 708-831(1)(b) provides: "(1) A person commits the offense of theft in the second degree if the person commits theft: . . . (b) Of property or services the value of which exceeds $300[.]" (Format altered.) HRS § 708-830(7) (Supp. 2013) provides, in relevant part: "A person commits theft if the person . . . intentionally receives, retains, or disposes of the property of another, knowing that it has been stolen, with intent to deprive the owner of the property."

of the First Circuit (Circuit Court)[2/] sentenced Young to a five-year term of probation, subject to a special condition that he serve a six-month term of imprisonment. The Circuit Court entered its Judgment on June 28, 2013.

Young's theory of defense at trial was that he did not know the guitar was stolen. On appeal, Young contends that his trial counsel provided ineffective assistance by failing to mount the additional defenses: (1) that the value of the stolen guitar did not exceed $300; and (2) that Young did not know that the value of the guitar exceeded $300. We affirm the Circuit Court's Judgment.

BACKGROUND

The following evidence was adduced at trial. On July 2 or 3, 2012, the CW's house was burglarized and numerous items, including his Taylor GS Mini guitar, was stolen. The CW had purchased the guitar six months earlier from Island Guitars for $522.50. The evening after his guitar was stolen, the CW searched craigslist and found two items posted by people looking to buy a GS Mini guitar. The CW contacted those people and asked them to inform the CW if someone responded to their craigslist posts. On July 6, 2012, a person named "Karl" informed the CW that Karl had been contacted by someone offering to sell a GS Mini guitar. Karl forwarded a picture of the guitar being offered for sale, and the CW was "pretty sure" it was his guitar. The person attempting to sell the guitar to Karl had sent him an e-mail using the name "D.P."

The CW called the police, and Karl made arrangements to meet the prospective seller in front of Macy's at Windward Mall at about 6:00 p.m. The CW went to Windward Mall in place of Karl, with the police conducting surveillance. The CW approached Young, who appeared to be looking for someone. The CW asked Young if he was selling a guitar. Young said yes and asked the CW if his name was "Karl." Young took the CW to Young's van and

---

[2/] The Honorable Randal K.O. Lee presided.

2

pulled out a guitar, which was in a case. The CW unzipped the case, examined the guitar, and confirmed that it was his guitar by checking the serial number. The CW asked Young how long Young had owned the guitar. According to the CW, Young said "oh, its not mine, or something like that."

The CW signaled the police who came to the van. The police asked the CW if the guitar was his guitar. When the CW answered "yes," Young said, "What, is it stolen?" Honolulu Police Department (HPD) Sergeant Maverick Kanoa (Sergeant Kanoa) instructed another officer to arrest Young. Young reacted by "look[ing] at [Sergeant Kanoa] surprised and [Young] asked what was going on[.]" Sergeant Kanoa told Young that he was being arrested for "detaining stolen property."

HPD Detective Michael Garcia (Detective Garcia) was qualified as an expert in appraising personal property. He received training from, and was certified by, the Certified Appraisers Guild of America; he determined the fair market value of property in theft and robbery cases as part of his duties as a detective; and he had previously testified as an expert in the field of general property appraising. In appraising the Taylor GS Mini guitar at issue in this case, Detective Garcia did online research, reviewed periodical articles, and determined whether the guitar was rare or common, the market trends, the supply and demand, and how badly people wanted the guitar. Detective Garcia concluded that the guitar's fair market value was $400.

On the night of Young's arrest, at about 11:30 p.m., HPD Detectives Mitchell Tomei and Jack Snyder interviewed Young at the Kāne'ohe Police Station. The interview was recorded, and relevant portions of the interview were played at trial. Young initially stated that a guy named "Pena" asked if Young wanted to make $50 by taking a guitar and selling it for $350 to a "guaranteed buyer" that Pena had found on craigslist. Young stated that Pena told him that the guitar was not stolen. Later in the interview, Young stated that D.P., and not Pena, had given

3

him the guitar. Young said he made up the name "Pena" because D.P. was his son's friend and Young was trying to protect D.P. When asked whether D.P. committed the burglary in which the guitar was taken, Young stated, "I'm pretty sure. I don't know." Young also stated that D.P. "mentioned [the guitar] was from a [burglary]." Young told the detectives that he had picked up D.P. with the guitar, then dropped D.P. off before going to Windward Mall.

Young testified in own defense at trial. Young stated that D.P. was a friend of Young's son and had also dated his daughter. According to Young, while he was giving D.P. a ride to Windward Mall, D.P. asked Young to help him sell a guitar and offered to pay Young $50 and gas money. D.P. mentioned the price of $350 for the guitar. At Windward Mall, Young met with the CW and showed him the guitar, and then the police arrived.

Young testified that prior to the arrival of the police, he did not know that the guitar had been stolen. Young had "heard rumors" about D.P. being involved in burglaries, but D.P. did not tell Young that D.P. had been involved in the burglary in which the guitar was stolen. In fact, Young thought that D.P. told him the guitar was not stolen. However, after the police arrived, Young put things together and concluded that D.P. had been involved in the burglary.

Young testified that during his police interview, the detectives kept badgering him and refused to accept his statements that he "had nothing to do with it[.]" Because of the badgering and his desire to "get out of there[,]" Young stated that half of the time, he did not even know what he said. Young indicated that he had to say that "[h]e had something to do with it just to get out of there[.]" Young repeated that he did not know the guitar was stolen until the police arrived and the CW said that the CW was the owner of the guitar. According to Young, that is why he reacted by asking if the guitar was stolen.

The jury found Young guilty as charged of second-degree theft.

DISCUSSION

I.

On appeal, Young contends that his trial counsel provided ineffective assistance in two respects: (1) by failing to mount a defense that the value of the stolen guitar did not exceed $300, which is the threshold amount for second-degree theft; and (2) by failing to mount a defense that Young did not know that the value of the guitar exceeded $300. We conclude that Young has failed to meet his burden of demonstrating that his trial counsel provided ineffective assistance.

II.

A defendant who raises a claim of ineffective assistance of counsel bears the burden of showing: (1) "specific errors or omissions of defense counsel reflecting counsel's lack of skill, judgment or diligence"; and (2) "that these errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." State v. Antone, 62 Haw. 346, 348-49, 615 P.2d 101, 104 (1980); State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998). "General claims of ineffectiveness are insufficient and every action or omission is not subject to inquiry." Briones v. State, 74 Haw. 442, 462, 848 P .2d 966, 976 (1993). As a general rule, "matters presumably within the judgment of counsel, like trial strategy, will rarely be second-guessed by judicial hindsight." Richie, 88 Hawai'i at 39-40, 960 P.2d at 1247-48 (1998) (internal quotation marks and citations omitted). If counsel's allegedly erroneous actions or omissions have "an obvious tactical basis for benefitting the defendant's case[,]" they "will not be subject to further scrutiny." Briones, 74 Haw. at 462-63, 848 P.2d at 976.

III.

To prove the charged offense of second-degree theft, the prosecution was required to establish, among other things, that Young: (1) knew the guitar had been stolen; (2) that the value of the guitar exceeded $300; and (3) that Young knew that the value of the guitar exceeded $300.

5

Young's theory of defense at trial was that he did not know the guitar had been stolen. In opening statement, Young's counsel informed the jury that "Martin Young is not guilty of Theft in the Second Degree in this case because he did not know that the Taylor GS mini guitar was stolen."

In closing argument, Young's counsel asserted that the case boiled down to whether Young knew the guitar was stolen. Counsel argued that there was no evidence to suggest that Young stole the guitar, that the evidence showed that D.P. had set up the sale of the guitar, and that all Young did was take the guitar to meet the prospective buyer. Citing the legal definition for the "knowing" state of mind, counsel argued that while Young's mental state may have been negligent or reckless as to whether the guitar was stolen, it did not rise to the level of the knowing mental state required for conviction. Counsel argued that the evidence of Young's surprised reaction and his asking whether the guitar was stolen when the police arrived demonstrated that Young did not know at that time that the guitar had been stolen. Counsel also discounted Young's interview statement to the HPD detectives, asserting that "it was taken sometime after [Young] was arrested, he was sitting in his cellblock the entire time, it was close to midnight, he was tired, he was being questioned by two trained detectives at the time. You know, what he said was taken out of context." Counsel argued that the State had failed to meet its burden of proving beyond a reasonable doubt that Young knew the guitar had been stolen.

IV.

Young contends that in addition to asserting the defense that he did not know the guitar was stolen, his trial counsel should have mounted defenses based on the additional claims that the value of the stolen guitar did not exceed $300 and that Young did not know the value of the guitar exceeded $300. We conclude that Young has not demonstrated that his trial

6

counsel provided ineffective assistance for failing to mount defenses based on these additional claims.

A.

The State presented strong evidence that the value of the stolen guitar exceeded $300. The CW testified that he had paid $522.50 for the guitar six months before it was stolen, an expert appraiser valued the guitar at $400, and Young himself told HPD detectives that he had been instructed to sell the guitar for $350. Young offers no evidence that the fair market value of the guitar did not exceed $300. Given the State's strong evidence that the value of the guitar exceeded $300 and the absence of contrary evidence, we conclude that Young has not shown that his trial counsel provided ineffective assistance by failing to mount a defense based on a challenge to the value of the guitar. See Antone, 62 Haw. at 348-49, 615 P.2d at 104.

B.

We are not privy to the communications between Young and his trial counsel, and Young was not specifically asked at trial if he knew whether the value of the guitar exceeded $300. Certainly, Young's trial counsel cannot be faulted for failing to "mount a defense" based on Young's asserted lack of knowledge that the value of the guitar exceeded $300 if Young in fact knew that the value of the guitar exceeded $300.

To the extent that Young argues that his trial counsel provided ineffective assistance for failing to argue that the evidence presented at trial was insufficient to show he had knowledge that the value of the guitar exceeded $300, we conclude that this argument lacks merit. The decision on what defense or defenses to assert from among the possible defenses available to a defendant involves considerations of trial strategy and tactics and the exercise of judgment. Defense counsel is not required to assert every possible defense. Indeed, asserting multiple or weak defenses may have an adverse effect on the defendant's case by distracting the jury's attention from a substantial defense or

7

causing the jury to question the credibility of the defendant's positions.

Here, from the outset of the case, the sole theory of defense presented to the jury was that Young did not know the guitar had been stolen. This defense, if accepted by the jury, would have resulted in Young's acquittal of second-degree theft and all lesser included offenses, which all require proof that the defendant knew the guitar had been stolen. On the other hand, the defense that Young did not know that the value of the guitar exceeded $300, even if accepted by the jury, would still have exposed Young to conviction for the lesser included offenses of third-degree theft (value not exceeding $100) and fourth-degree theft (any value not in excess of $100). See HRS § 708-832 (Supp. 2013); HRS § 708-833 (1993). In addition, Young's trial counsel may have concluded that the defense that Young lacked knowledge that the guitar was stolen would be more attractive to a jury, because it would show the absence of criminal culpability, whereas the defense that Young simply lacked knowledge of the stolen item's value could be viewed by the jury as a less attractive, technical defense. Furthermore, the State presented evidence that Young told the HPD detectives that he had been instructed to sell the guitar for $350, and Young himself testified at trial that D.P. mentioned the price of $350 for the guitar. Thus, Young's trial counsel would have had to overcome this evidence in arguing to the jury that the trial evidence did not show that Young knew the value of the guitar exceeded $300.

Under the circumstances of this case, we cannot say that the defense strategy of focusing on a theory of defense that Young did not know the guitar had been stolen was unreasonable or constituted ineffective assistance of counsel. We decline to second-guess or micro-manage the judgment of Young's trial counsel in making strategic choices relating to trial strategy regarding the choice of what defense to assert. See Richie, 88

Hawai'i at 39-40, 960 P.2d at 1247-48; <u>Briones</u>, 74 Haw. at 462-63, 848 P.2d at 976.

CONCLUSION

For the foregoing reasons, we affirm the Circuit Court's Judgment.

DATED:  Honolulu, Hawai'i, July 31, 2014.

On the briefs:

Glenn D. Choy
for Defendant-Appellant

Sonja P. McCullen
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Craig H. Nakamura
Chief Judge

Daniel R. Foley
Associate Judge

Associate Judge